UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE MARY JONES, | ) | |
| | ) | |
| Plaintiff, | ) | No. 11 C 04924 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| REGIONAL TRANSPORTATION | ) | |
| AUTHORITY, and | ) | |
| LILLIAN G. WALLACE, in her official | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Christine Mary Jones alleges that the Regional Transportation Authority and Lillian G. Wallace, in her official capacity, discriminated against her in violation of the Americans with Disabilities Act, 42 U.S.C. § 12143, and the Rehabilitation Act, 29 U.S.C. § 794.[1] Jones also brings a claim under 42 U.S.C. § 1983. Defendants move to dismiss [R. 20] all claims in Jones' first amended complaint [R. 19] pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained more fully below, Defendants' motion is granted, but Jones may file an amended complaint by July 30, 2012.

**I.**

In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations. Christine Mary Jones is a resident of Oak Park, Illinois. R. 19 (Am.

---

[1]This Court has subject matter jurisdiction in this federal-question case under 28 U.S.C. § 1331.

Compl.) ¶ 5. She has a psychological impairment that substantially limits her in "the major life activity of caring for herself," particularly in her ability to independently locate and use public transportation, to comprehend public transportation schedules and fixed routes, and to travel to a boarding location or from a disembarking location. *Id.*

Defendant Regional Transportation Authority is a public entity that receives federal funding and operates a fixed-route bus service throughout Cook, DuPage, Kane, Lake, McHenry, and Will counties. *Id.* ¶ 6. The RTA is responsible for the financial oversight of the region's three public transit operators: the Chicago Transit Authority, the Metra commuter rail, and the Pace Suburban Bus Service. *Id.*; *see also* R. 22-1 (Defs.' Exh. 1) at 1. The RTA also operates a paratransit system for people with disabilities pursuant to the Americans with Disabilities Act. *Id.* The RTA oversees the eligibility determination process for paratransit services. *Id.* ¶¶ 7, 8.

In May 2010, Jones applied for paratransit services. *Id.* ¶ 7. The RTA decided Jones was not eligible. *Id.* ¶ 8. Jones appealed the decision within the agency's internal review system, *see* 70 ILCS 3615/2.30(c)(9), but her appeal was denied. *Id.* ¶ 9. Jones now alleges that the RTA's denial of paratransit services violates the ADA and the Rehabilitation Act. Jones also claims that although she is qualified to receive paratransit services, the RTA has "implemented a policy and practice" that denies her services, and she tries to bring this claim under 42 U.S.C. § 1983. *Id.* ¶¶ 12, 21.

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *McGowan v. Hulick*, 612 F.3d 636, 637 (7th Cir. 2010) (courts accept factual allegations as true and draw all reasonable inferences in plaintiff's favor). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are

3

entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

## III.

Jones' complaint must be dismissed in its entirety. First, although the Court agrees with Jones that there does exist a private right of action under Title II of the ADA, the allegations in the amended complaint are insufficient, as a matter of law, to state a claim of disability discrimination. Second, Jones cannot rely on § 1983 as a procedural vehicle for remedying a violation of a statutory right covered by Title II of the ADA. Finally, even if Jones could rely on § 1983 to bring a claim against Defendants, the complaint inadequately alleges a basis for municipal liability against the Regional Transportation Authority and is completely devoid of any allegations as to Defendant Wallace in her official capacity as an agent of the RTA.

## A.

As explained below, on the threshold matter of the cause of action's existence, the Court holds that there does exist a private right of action to enforce Title II of the ADA, 42 U.S.C. § 12143(a).[2] But whether a federal private right of action exists is a separate matter from whether Jones has sufficiently pled her claims. Here, Jones' amended complaint inadequately alleges a case of discrimination under the ADA.

---

[2] The portion of the implementing regulations, 49 C.F.R. § 37.123(e)(1), cited by Jones is identical to 42 U.S.C. § 12143(c). Since a private right of action exists under the statute, there is no need to rely on the regulations for an identical private right of action.

4

**1.**

The ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004). Generally speaking, public transportation is among the public services covered by Title II's non-discrimination provision. In particular, 42 U.S.C. § 12143 defines discrimination to include the failure to provide disabled individuals with paratransit services that are comparable to those received by non-disabled persons:

> It shall be considered discrimination for purposes of section 12132 of [Title 42] and section 794 of Title 29 for a public entity which operates a fixed route system . . . to fail to provide with respect to the operations of its fixed route system, in accordance with this section, paratransit and other special transportation services to individuals with disabilities . . . that are sufficient to provide to such individuals a level of service (1) which is comparable to the level of designated public transportation services provided to individuals without disabilities using such system . . . .

42 U.S.C. § 12143(a). The category of eligible individuals includes: "any individual with a disability who has a specific impairment-related condition which prevents such individual from traveling to a boarding location or from a disembarking location on such system[.]" *Id.* § 12143(c)(1)(A)(iii).

On the question of how Title II may be enforced, the RTA argues that no private right of action exists, that is, an individual plaintiff may not bring suit to enforce Title II. To answer the question, the starting point is 42 U.S.C. § 12133, which is the statutory section within Title II entitled, "Enforcement." Section 12133 directs that the

5

"remedies, procedures, and rights set forth in section 794a of Title 29," which is the enforcement provision of the Rehabilitation Act, applies to Title II discrimination. 42 U.S.C. § 12133 (applying Rehabilitation Act enforcement to Title II discrimination under 42 U.S.C. § 12132). But the Rehabilitation Act is not the final destination of the inquiry, because the Rehabilitation Act adopts (as pertinent to enforcement outside of the employment context) the "remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964." 29 U.S.C. § 794a(a)(2) (referring to Title VI, 42 U.S.C. § 2000d *et seq.*). Title VI of the Civil Rights Act of 1964 bars recipients of federal financial assistance from discriminating on the basis of race, color, or national origin in covered programs and activities. And there *is* a private right of action to enforce Title VI's statutory provisions. *See Alexander v. Sandoval*, 532 U.S. 275, 280 (2001) (explaining that private right of action exists to enforce Title VI's *statutory* provisions, but not to enforce *regulations* that go beyond statutory ban on intentional discrimination). So to complete the chain of references: there is a private right of action to enforce Title II's statutory non-discrimination provisions, *see Barnes v. Gorman*, 536 U.S. 181, 185 (2002) (using same chain of references based on § 12132, § 12133, the Rehabilitation Act, and Title VI), and an eligible individual may have a private right of action to enforce § 12143's paratransit provision, *see Abrahams v. MTA Long Island Bus*, 644 F.3d 110, 118 (2d Cir. 2011) (§ 12143 enforceable through § 12132).[3]

---

[3]Although the case will be moving forward if Jones files a sufficient amended complaint, it is not yet clear what, if any, administrative law principles might apply to the RTA's decision. Perhaps none will apply because § 12143 does not seem to refer to deference to the administrative agency (nor does it mention other typical administrative-law principles, such

6

Defendants offer a second line of defense: even if there is a private right of action, Defendants contend that the action has a limited scope. Specifically, Defendants argue that, at most, only *system*-wide failures to provide paratransit services can form the basis of a lawsuit: as Defendants put it, "discrimination in violation of the ADA only occurs if a public entity that operates a fixed-route system does not provide a paratransit service that is (1) comparable to fixed-route service, or (2) in accordance with the plan for paratransit service submitted to the Secretary." R. 22 (Defs.' Br.) at 5 (citing § 12143(c)(1)(A)(i), (iii)). In essence, Defendants argue that so long as the RTA operates a paratransit service, the RTA meets the ADA requirements under § 12143—even if the RTA does not actually provide paratransit service to those who are truly eligible.

But this interpretation of the non-discrimination command of § 12143 does not square with the statute's text. Section 12143(a) explicitly states that it is discrimination when a public entity that operates a fixed-route system does not provide paratransit services "to *individuals* with disabilities" (emphasis added) that is comparable to the level of service provided by the fixed-route system. Section 12143(c) further directs the Secretary of Transportation to issue regulations implementing the

---

as exhaustion). And the Illinois statute regulating paratransit services—which adopts the federal regulations regarding eligibility, *see* 49 CFR § 37.125—simply requires the RTA to "develop a plan for the provision of ADA paratransit services" that "provide[s] for a process of determining eligibility for ADA paratransit services that complies with the [ADA] and its implementing regulations." 70 ILCS 3615/2.30(c)(9). In other words, the certification process's existence is mandated by federal and state regulations, but the certification procedures and decision-making do not, it appears, to be set forth in regulations. In any event, either party (or both) may raise this issue if and when this litigation moves forward.

7

non-discrimination ban, and subsection (c) instructs in detail that "any individual" with certain disabilities is eligible for paratransit services. In other words, the RTA is required to operate paratransit services at a level comparable to its fixed-route service, and must also actually provide such paratransit services to *individuals* with disabilities. Any *individual* who qualifies for paratransit services has a private cause of action under the text of subsection (a). There is no text in § 12143(a) that limits the definition of discrimination to system-wide discrimination.[4]

With no textual support in § 12143(a) itself, Defendants rely on subsection (e) of § 12143, which lists examples of the term "discrimination" as used in subsection (a). Defs.' Br. at 5. Those examples relate to the creation and implementation of paratransit plans (which are specifically required by other subsections of § 12143) and the provision of services in accordance with those plans. But § 12143(e) does *not* purport to limit the term "discrimination" to the particular examples; the prefatory language of the subsection states, "[a]s used in subsection (a) of this section, the term 'discrimination' *includes*" the listed examples. § 12143(e) (emphasis added). In other words, subsection (e) is an inclusive rather than exclusive listing. What subsection (e)

---

[4]Nor is it clear what "system-wide" discrimination means. Defendants do not explain what needs to occur in order for an individual to state a claim based on a system-wide failure to provide paratransit services. Does this mean that a person only has a claim against the RTA if the RTA fails to provide paratransit services to *anyone*? Or, similarly, is the RTA in compliance with § 12143 so long as the RTA has some sort of plan for paratransit service in place, even if that plan does in fact deny comparable service to disabled individuals? How many disabled individuals must a "system-wide" failure affect before crossing the threshold to comprise "system-wide" discrimination? The lack of any textual clues to the answer to these questions suggests that discrimination against a particular, qualified individual is sufficient to comprise a denial of "the benefits of the [transportation] services" offered by the RTA, which runs afoul of the protections afforded by Title II of the ADA. *See* § 12132.

8

does is ensure that certain directives sprinkled throughout the other subsections of § 12143 are included within the "discrimination" barred by § 12143(a). So an individual may bring an action to enforce the non-discrimination command of § 12143(a), that is, for failing to provide that individual with paratransit service comparable to the level of service enjoyed by non-disabled persons.[5]

**2.**

Although Jones can maintain a private right of action against the RTA under § 12143(a), Jones' amended complaint fails to state a claim for discrimination under the ADA and the Rehabilitation Act.[6] To state a claim for discrimination, Jones must adequately plead that: (1) she is disabled as defined under the statutes; (2) she is qualified for the benefits sought; (3) she was denied these benefits because of her disability; and (4) the defendant is a public entity that (for the Rehabilitation Act claim) receives federal funding. *See Hale v. Pace*, 2011 WL 1303369, at *4 (N.D. Ill. Mar. 31, 2011) (citing *Torrence v. Advanced Home Care, Inc.*, 2009 WL 1444448, at *3 (N.D. Ill. May 21, 2009)). The RTA does not contest the fourth element—it is a public

---

[5]This conclusion is consistent with the Second Circuit's decision in *Abrahams v. MTA Long Island Bus*, 644 F.3d 110, 118 (2d Cir. 2011). *Abrahams* held that a private right of action does exist to enforce the statutory commands in § 12143. *Id.* at 118. To be sure, *Abrahams* did reject an attempt by a plaintiff to enforce a *regulation* that went beyond § 12143 itself. *Id.* at 119-20. In this case, however, Jones may enforce the *statutory* requirement of comparable paratransit services found in § 12143 itself.

[6]The requirements for stating a claim for discrimination under Title II of the ADA and the Rehabilitation Act are identical with two significant exceptions. *Washington v. Ind. High Sch. Athletics Ass'n, Inc.*, 181 F.3d 840, 845 n.6 (7th Cir. 1999) (the Rehabilitation Act applies only to federally-funded entities and requires that the defendant acted "solely" by reason of disability). In this case, the RTA does not argue that either exception applies, so the standards for stating a claim under the ADA and the Rehabilitation Act are discussed concurrently.

9

entity that receives federal funding. Defs.' Br. at 6 n.3. However, Jones has not sufficiently pled the first, second, and third elements.

First, the amended complaint alleges that Jones has a "psychological impairment" that substantially limits her in the major life activity of caring for herself. Am. Compl. ¶ 5. This is merely a near-quotation of the legal definition of the term "disability" under the ADA: "a physical or mental impairment that substantially limits one or more major life activities of such individual[.]" 42 U.S.C. § 12102(1)(A). *Iqbal* and *Twombly* make clear that legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 555. The amount of factual detail required in order to sufficiently plead a claim is context-specific and relies on common sense. *Iqbal*, 556 U.S. at 663-64. Here, Jones does not identify her mental impairment, and even if there is no diagnosed disorder, she does not allege any facts that would put Defendants on notice as to what type of "psychological impairment" she suffers from.[7] The lack of factual allegations requires the Court to conclude that, for now, Jones has insufficiently pled that she has a disability as defined under the ADA.

Second, and relatedly, Jones alleges that she is qualified for paratransit services and that the RTA unlawfully denied her eligibility for paratransit services because of her disability. Am. Compl. ¶ 12. Those allegations depend on the first element, namely,

---

[7]Attached to Jones' *pro se* complaint is a letter from Defendant Lillian Wallace, which states that Jones has schizophrenia and becomes "confused when traveling on fixed route transportation." *See* R. 1. However, the Court may not rely on the Wallace letter because it was not included in the first amended complaint (which is currently the only operative complaint in this case).

a sufficient allegation of "disability." If Jones is not "disabled" as defined by the ADA, she cannot be qualified for paratransit services and the RTA would correctly have denied her eligibility. Without additional factual allegations, these statements are nothing more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678.

Thus, the Court must grant Defendants' motion to dismiss the ADA and Rehabilitation Act claims. But for now the dismissal is without prejudice, based on two reasons. First, Jones commenced this lawsuit *pro se*, and the complaint has been amended only once since her appointed counsel appeared in the case. Second, it is possible that further amendments could permit the complaint to survive a motion to dismiss. It is also significant that, in her response brief, Jones requested leave to amend the complaint if the Court deemed it insufficient. *See* R. 25 (Pl.'s Resp.) at 8. Thus, in accordance with Rule 15(a)(2)'s generous amendment policy, the dismissal is without prejudice. On or before July 30, 2012, Jones may file an amended complaint. If she does not do so by that date, the dismissal will automatically convert to a dismissal with prejudice.

**B.**

Jones also attempts to assert a claim under 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege that: "(1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law." *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004). Section 1983 does not itself grant individuals

constitutional or statutory rights, but instead provides a procedural vehicle for bringing suit to remedy violations of a right independently premised on the Constitution or on federal law. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). Congress can choose to foreclose reliance on § 1983 for remedying statutory violations, and congressional intent may be demonstrated by the existence of a comprehensive remedial scheme provided by the statute that is the source of the substantive right. *Wright v. Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 423 (1987); *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14 (1981); *Alexander v. Chicago Park Dist.*, 773 F.2d 850, 856 (7th Cir. 1985) ("Generally, where a statute provides its own comprehensive enforcement scheme, that scheme may not be bypassed by pleading an underlying violation of the statute and bringing suit directly under § 1983.").

In this case, Jones cannot rely on § 1983 to bring a claim against the RTA, because (1) no constitutional-right violation is alleged, and (2) Congress has established a comprehensive remedial scheme that forecloses reliance on § 1983 for remedying ADA or Rehabilitation Act violations.

The first amended complaint does not allege a constitutional violation—only statutory violations are alleged. Am. Compl. ¶ 21. Specifically, Jones claims that the Regional Transportation Authority implemented "a policy and practice" that violates Title II of the ADA, its implementing regulations, and Section 504 of the Rehabilitation Act. *Id.* No reference to a constitutional right violation is found in Jones' first amended complaint.

With regard to the alleged statutory-rights violation, the Seventh Circuit has not yet decided whether the extensive remedial scheme under Title II of the ADA precludes using § 1983 to enforce the ADA. *Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F.3d 277, 281 (7th Cir. 2003) (plaintiff based § 1983 claim on Equal Protection Clause of the Fourteenth Amendment); *see Zachary M. v. Bd. of Educ. of Evanston Twp. High Sch. Dist. No. 202*, 829 F. Supp.2d 649, 662-63 (N.D. Ill. 2011) (neither the Supreme Court nor the Seventh Circuit has expressly ruled on the issue of whether the ADA's enforcement scheme precludes a § 1983 claim). Several other circuits have held that the ADA's remedial scheme forecloses § 1983 relief. For example, the Eleventh Circuit in *Holbrook v. City of Alpharetta,* reasoned that the Rehabilitation Act and the ADA's comprehensive remedial schemes already addressed all of the plaintiff's claims, so allowing the § 1983 claims would effectively "provide the plaintiff with two bites at precisely the same apple."[8] 112 F.3d 1522, 1531 (11th Cir. 1997); *see also Vinson v. Thomas*, 288 F.3d 1145 (9th Cir. 2002); *Lollar v. Baker*, 196 F.3d 603 (5th Cir. 1999); *Alsbrook v. City of Maumelle*, 184 F.3d 999 (8th Cir. 1999).

The Seventh Circuit has applied similar reasoning to other statutes. For instance, in *Alexander v. Chicago Park District*, the Seventh Circuit reiterated that Title VII violations may not be brought under § 1983. 773 F.2d at 856. The opinion went on to hold that § 1983 could not be used to bring a claim based solely on Title VI

---

[8]The Eleventh Circuit adopted the district court's reasoning in *Holmes v. City of Chicago*, 1995 WL 270231 (N.D. Ill. 1995). *Holmes* held that Section 504 and Title II of the ADA preclude § 1983 claims that are based on the same alleged injuries.

13

violations, because Title VI contains "its own administrative enforcement procedure which would be bypassed" otherwise. *Id.* Here, as discussed above, Title II of the ADA offers the comprehensive remedial scheme set forth in Title VI.[9] And Jones' § 1983 claim alleges a violation of the ADA and Rehabilitation Act. Thus, the Court concludes that Jones cannot invoke § 1983 to enforce the ADA and the Rehabilitation Act. The § 1983 claim is dismissed with prejudice.

## C.

For the sake of completeness, the Court also notes the redundancy in bringing the suit against Defendant Wallace in her official capacity. Naming Wallace in that capacity, that is, as an agent of the Regional Transportation Authority, is in reality merely naming the RTA. *See Richman v. Sheahan*, 270 F.3d 430, 439 (7th Cir. 2001) (a suit against a public official in his official capacity is a suit against the government entity of which he is an agent). Since the RTA is already a defendant, any official capacity allegations are redundant. The official capacity claim against Wallace is also dismissed with prejudice.

## IV.

For the reasons stated above, Defendants' motion to dismiss [R. 20] is granted, but the complaint is dismissed, for now, without prejudice. Consistent with the discussion above, Jones has leave to file an amended complaint as to the claims alleged

---

[9]As noted above, 29 U.S.C. 794a(a)(2) provides that "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 . . . shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title."

under the Americans with Disabilities Act and the Rehabilitation Act. She must do so by July 30, 2012, or else the dismissal will automatically convert to a dismissal with prejudice. To track the case a status hearing is set for August 2, 2012, at 9:30 a.m.

ENTERED:

_____
Honorable Edmond E. Chang
United States District Judge

DATE: July 16, 2012