UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE MARY JONES, | ) | |
| | ) | |
| Plaintiff, | ) | No. 11 C 04924 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| REGIONAL TRANSPORTATION | ) | |
| AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Christine Mary Jones has brought suit against Defendant Regional

Transportation Authority (RTA), alleging that the RTA, which oversees public

transportation in the Chicago region, discriminated against her in violation of the

Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and the

Rehabilitation Act, 29 U.S.C. § 701 *et seq.*[1] Jones suffers from schizophrenia, and

she charges that the RTA unlawfully denied her application to receive paratransit

service, which provides door-to-door transportation for qualifying individuals with

disabilities as required by federal law. The RTA now moves for summary judgment.

R. 59, Mot. Summ. J.[2] For the reasons stated below, the RTA's motion is granted.

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

[2]Citation to the docket is "R." followed by the entry number and, when necessary, the page/paragraph number. Citations to the parties' Local Rule 56.1 Statements of Fact are "DSOF" (for the RTA's Statement of Facts) [R. 62]; "PSOF" (for Jones' Statement of Additional Facts) [R. 69 at 12-13]; "Pl.'s Resp. DSOF" (for Jones' response to the RTA's Statement of Facts) [R. 69 at 1-12]; and "Def.'s Resp. PSOF" (for the RTA's Response to Jones' Statement of Additional Facts) [R. 74].

## I. Background

For purposes of deciding this motion for summary judgment, the following facts and evidence are presented in the light most favorable to Jones as the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### A. Jones' Paratransit Application and Finding of Ineligibility

The RTA is a municipal corporation that coordinates public transportation operations in a handful of counties in and around Chicago. DSOF ¶ 2. Although it does not actually operate the mass transit in its jurisdiction, such as Chicago Transit Authority subways and buses, Pace Suburban Bus Service, and Metra commuter rail, the RTA oversees the certification process for ADA paratransit eligibility for CTA and Pace riders. *Id.* ¶¶ 2, 8. ADA paratransit service provides on-demand, door-to-door transportation for eligible individuals whose disabilities prevent them from using fixed-route public transit like bus and rail. *Id.* ¶ 7.

Jones lives in Oak Park, Illinois and suffers from schizophrenia. *Id.* ¶¶ 1, 5. On April 29, 2010, she submitted an application to receive ADA paratransit services from the RTA on the basis of her schizoaffective disorder. *Id.* ¶ 14; R. 62-5, Jones Application ¶ II. (A previously unsuccessful application was filed by Jones in 2008, but that denial is not at issue in the present lawsuit. DSOF ¶ 13.) On the application, Jones checked boxes stating that she could "get to and from bus stops or [subway] stations if the distance is not too great," "can ride the buses or [ ] trains when [ ] feeling well" but not when her "disability or health condition worsens," and

"can use fixed route buses or [ ] trains if it's someplace [she goes] all the time." Jones Application ¶ III. Jones also wrote, in a section asking for more information about her disability, that she sometimes became "confused on the directions and would get lost," and was "not familiar with the area" of the suburbs where she now lived. *Id.* ¶ IV.

As part of the screening process, Jones was interviewed in person by an employee of a third-party contractor about her disorder and its symptoms, as well as the effects of her medication and her ability to use public transportation. *Id.* ¶ 17. According to notes taken at the interview, the authenticity of which Jones does not dispute, Jones had suffered from schizoaffective order for ten years, taken medications regularly to keep the condition in control, and reported chronic confusion, troubles with problem solving, and focusing. R. 62-5, Main Interview Guide at R/Jones 0026. The notes also indicated that Jones was using fixed-route service daily and was capable of making transfers. *Id.* The interviewer commented that Jones "has bad days with increased confusion but she is still able to use public transportation if she has to." *Id.* at R/Jones 0029. In particular, the interviewer observed that Jones had learned how to complete fixed-route travel by calling trip assistance or by being shown how to make the trip first; this travel included trips by public transit to the library, a college, her doctor's office, relatives in Chicago, and the Social Security Administration office. *Id.* at R/Jones 0032.

At the evaluation, Jones was also administered a Mini-Mental State Examination (or MMSE), on which she scored 29 out of a possible 30 (higher scores

indicating less impairment). DSOF ¶ 18. Based on a review of Jones' application and the documentation completed by the interviewer, an RTA ADA Certifier determined that Jones was not eligible for paratransit service. *Id.* ¶ 19. The RTA explained to Jones by letter that based on the information obtained, Jones' disability did not prevent her from using fixed-route public transportation. *Id.* ¶ 20.

Jones appealed this determination to the RTA's Eligibility Review Board, which resulted in an administrative review, but that review arrived at the same finding of ineligibility. *Id.* ¶¶ 21-22. In September 2010, a three-member panel of the review board later held a hearing to consider Jones' application. At the hearing, Jones appeared and submitted an additional document, a statement from her doctor, Dr. Jagannath Devulapally. *Id.* ¶¶ 23-24. Dr. Devulapally, in a short handwritten note, opined that Jones "needs additional assistance (paratransit) in her ability to self transport due to symptoms of confusion which have limited her ability to use [public transit]." R. 68-1, Note dated 08/13/2010. In October 2010, the review board notified Jones in writing that it was upholding the finding that she was ineligible for paratransit service based on her application documents, the results of her evaluation, her doctor's note, and her statements at the hearing. DSOF ¶ 25.

## B. Procedural History

Jones commenced this lawsuit *pro se* in August 2011, naming as defendants the RTA and an individual member of the review board panel that heard Jones' appeal, Lillian Wallace. R. 8, Compl. After Defendants moved to dismiss Jones' first

amended complaint, the Court dismissed Jones' claims against Wallace as redundant, because the RTA, for which Wallace was acting as agent in her official capacity, was already a defendant. R. 34, Mem. Op. and Order dated July 16, 2012 at 14. The Court also dismissed Jones' purported cause of action under 42 U.S.C. § 1983 for civil-rights violations, finding that the comprehensive remedial scheme provided by the ADA precluded a § 1983 claim for the harm Jones alleged. *Id.* at 13-14 (applying reasoning of Seventh Circuit precedent deeming § 1983 claims precluded where remedial procedures available under Title VI and Title VII).

Although Jones' cause of action under the ADA was dismissed as insufficiently pled, the Court rejected the two legal contentions that the RTA advanced against the viability of her claims—namely, that no private right of action exists under the ADA and Rehabilitation Act, and that failure to provide paratransit services can only be actionable where there is system-wide discrimination as opposed to individualized harm. *Id.* at 5-9. The Court instead gave leave for Jones to amend her complaint to state a private cause of action for alleged individualized discrimination. *Id.* at 11. Jones filed a second amended complaint with the benefit of recruited *pro bono* counsel, raising claims under the ADA and the Rehabilitation Act, as enforceable through Title VI of the Civil Rights Act of 1964. R. 35, Second Am. Compl. The parties having completed discovery on those remaining claims, the Court now considers whether the claims survive the summary-judgment stage in light of a developed record.

## II. Standard of Review

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). They may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only competent evidence of a type otherwise admissible at trial, *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

## III. Discussion

The RTA contends that Jones's impairment did not prevent her from using the fixed-route system, and thus she is ineligible for paratransit service. R. 61, Def.'s Br. at 4-11. Despite Jones' attempts to characterize the record to the contrary,

and even with the evidence viewed in the light most favorable to her, the Court agrees that summary judgment is appropriate on this basis.

**A. The ADA, Rehabilitation Act, and Access to Paratransit Services**

Title II of the ADA outlaws discrimination against individuals with disabilities in the areas of "public services" and "programs and activities." *Wisc. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 750 (7th Cir. 2006) (citing 42 U.S.C. §§ 12131-12165). To impose liability under Title II, a plaintiff must prove "[1] that he is a 'qualified individual with a disability,' [2] that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and [3] that the denial or discrimination was 'by reason of' his disability." *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996) (quoting 42 U.S.C. § 12132). The Rehabilitation Act similarly forbids discrimination against individuals with disabilities, that is, denial of benefits solely by reason of that disability, but specifically by "any program or activity that receives federal financial assistance." 29 U.S.C. § 794(a). The elements of a Rehabilitation Act claim are identical to the elements of an ADA claim, with the exception of the further requirement that the defendant have received federal funding. *See, e.g., Jackson v. City of Chicago*, 414 F.3d 806, 811 n.2 (7th Cir. 2005).

As an obligation under both the ADA and the Rehabilitation Act, a public entity that operates a fixed-route transit system must provide "paratransit and other special transportation services to individuals with disabilities … that are sufficient to provide to such individuals a level of service" that is "comparable to

public transportation services available to individuals without disabilities." 42 U.S.C. § 12143. An eligible recipient of paratransit services includes "any individual with a disability who is unable, as a result of a physical or mental impairment … to board, ride, or disembark from any vehicle on the [fixed-route] system," or "any individual with a disability who has a specific impairment-related condition which prevents such individual from traveling to a boarding location or from a disembarking location on such system." 42 U.S.C. §§ 12143(c)(1)(A)(i), (iii). An impairment that merely makes an individual's ability to get to and leave the boarding/disembarking location "more difficult" but does not actually prevent the travel does not trigger paratransit eligibility. 49 C.F.R. § 37.123(e)(3)(i); *see also* 49 C.F.R. § Pt. 37, App. D (specifying that "prevented travel" occurs "where the difficulties are so substantial that a reasonable person with the impairment-related condition in question would be deterred from making the trip"). According to the Department of Transportation's interpretation, the applicable regulations specifically envision "a lack of cognitive ability to remember and follow directions" as an eligible impairment-related condition. 49 C.F.R. § Pt. 37, App. D.

## B. Jones Cannot Establish She was Paratransit Eligible

At the outset, the RTA asserts that the Court owes "great deference" to its determination that Jones was ineligible for paratransit because it was an administrative action taken by a state agency. Def.'s Br. at 5. The authority relied on by the RTA for this proposition does not directly support that deference. The Illinois appellate case cited by RTA, *PACE, Suburban Bus. Div. of Reg'l Transp.*

*Auth. v. Reg'l Transp. Auth.*, advanced the proposition that certain administrative

actions, in particular budgetary decisions, should be respected unless arbitrary or

capricious. 803 N.E.2d 13, 27 (Ill. App. Ct. 2003). True enough, but the present case

does not call into question, as *PACE* did, the propriety of an agency's exercise of

statutorily delegated discretion, like budgeting; instead, at issue here is whether

the RTA independently violated federal anti-discrimination laws. In other words,

the Court does not review the RTA review board's conclusions of law and findings of

fact concerning Jones' application as it would in hearing an administrative appeal

(as with, say, a decision by the Commissioner of Social Security finding a claimant

ineligible for Social Security disability benefits), but rather must weigh—as with

any other discrimination claim—whether the plaintiff has sufficiently presented the

elements of a cause of action under the ADA and Rehabilitation Act.[3] It might be a

different matter if Jones had sought review of the RTA's decision via an appeal in

the state-court system, *see Sell v. N.J. Transit Corp.*, 689 A.2d 1386, 1390 (N.J. Sup.

Ct. App. Div. 1997) (treating denial of paratransit application as agency decision

governed by state administrative procedural law), but instead she brought a private

---

[3]Under applicable regulations, an entity like the RTA must establish "an administrative appeal process through which individuals who are denied eligibility" for paratransit "can obtain review of the denial" (which the RTA has done). 49 C.F.R. § 37.125(g). But there is no provision for judicial review of the outcome of this appeals process—in contrast, for example, to the express grant of jurisdiction to federal district courts to hear appeals (under a deferential, "substantial evidence" standard) of Social Security disability determinations. *See* 42 U.S.C. § 405(g). Thus, in bringing the present case, Jones does not appeal an administrative decision; rather, she exercises an independent, statutory right of action that makes no mention of any kind of a deferential standard of review—even if the defendant is a municipal corporation approximating the role of administrative agency. *See* Mem. Op. and Order dated July 16, 2012 at 5-6 (outlining basis for private cause of action to enforce paratransit provision under ADA and RA through Title VI of the Civil Rights Act).

right of action under the ADA and the Rehabilitation Act. The RTA does not point to any federal statute or federal regulation likening the claims to an administrative appeal akin to, for example (again), a review of a denial of Social Security benefits.

Even without the benefit of any deference, however, it is evident from the discovery record that the RTA is correct in its contention that Jones cannot establish that she was eligible for paratransit service, even viewing the evidence in her favor. In considering her application, the RTA's review board was presented with ample evidence that Jones could functionally navigate public buses and trains. There was Jones' own characterization on her application that she could use public transit for trips she took frequently, Jones Application ¶ III, and, as stated during her screening interview, that despite some instances of confusion she traveled daily on fixed-route transportation, including making transfers, with the help of trip assistance, Main Interview Guide at R/Jones 0026. These trips were to a varied list of locations, including relatives' homes in Chicago, the Social Security office, her doctor, and her college. *Id.* at 32. The review board also knew that Jones had scored a near-perfect 29 on her mental state evaluation, indicating that she had normal cognitive functioning. DSOF ¶ 18.[4]

By contrast, objective evidence in support of Jones' contention on her application that she could not use public transit when her condition worsened, Jones Application ¶ III, was limited to Dr. Devulapally's short note concluding that

---

[4]The characterization of a score of 29 on the Mini-Mental State Examination as indicating "normal cognitive functioning" is the RTA's. Def.'s Br. at 7. The parties have not submitted any detailed guide to understanding the scoring system of the MMSE but Jones does not dispute this characterization or other descriptions about the test presented by the RTA in its briefing.

Jones required paratransit assistance "due to symptoms of confusion," Note dated 08/13/2010. The problem is that this one-sentence statement merely makes a legal conclusion without providing any probative context about the nature and severity of Jones' condition; absent "specific facts showing that there is a genuine issue for trial," such an opinion, even from a claimant's treating physician, is not enough to withstand summary judgment. *Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, 952 (7th Cir. 2000) (quoting Fed. R. Civ. P. 56(e)) (physician's conclusory testimony that plaintiff is disabled in the "duration, manner, or condition" specified by the ADA insufficient); *see also Scheerer v. Potter*, 443 F.3d 916, 919 (7th Cir. 2006) ("Specific facts are required" to survive summary judgment in Rehabilitation Act claim and "conclusory allegations will not do.").

Nor has discovery in this litigation produced evidence that might shed additional light on the issue. Despite Jones' reliance on it, Dr. Devulapally's deposition testimony is not helpful to her case. To be sure, Devulapally testified that an individual like Jones, when experiencing greater symptoms of schizophrenia, would have difficulty in navigating fixed-route schedules, R. 68-1, Exh. B, Devulapally Tr. at 27, as "her interpretation of information [would be] no longer reliable" and "written and verbal instructions … not always comprehended," *id*. at 26. Yet Devulapally's opinions were limited to his recollections of Jones' "general problems," *id*. at 13, explaining that actually she "generally was functioning well … when she was stable" and "could be mostly independent, but

there were periods of time … that she was more symptomatic and less stable." *Id*. at 19.

Crucially, although the doctor discussed in broad terms how Jones' illness had become severe in the past to the point of requiring hospitalization, *id*. at 35, he never identified whether she was in a period of instability, of any degree, at or around the time of her paratransit application. Instead, the only concrete timeframe he provided was when he conjectured that, following the death of her brother, she may have been symptomatic in "maybe [the] middle or late part of 2011," that is, the year after Jones' application. *Id*. at 34. Indeed, when asked specifically about Jones' mental state when he wrote his note, Devulapally conceded that "it's hard for me to remember the details of what kind of cognitive problems she may have been exhibiting at this time." *Id*. at 13. The most precise that Devulapally could be about her mental state in the relevant period was that Jones "probably" had a global assessment functioning score of around 50, *id*. at 37, a score that, according to him, "suggests someone who is probably able to manage in an outpatient capacity," even if "doing so with some impairments," *id*. at 29-30.

In sum, Devulapally provided no more concrete information about Jones' actual condition than he did in his one-sentence note. His deposition testimony, which was an opportunity to explain the reasoning behind his opinion, still amounted to a reiteration of the same conclusory statement, at best speculating about impairments that Jones *could have* experienced at any time. A medical opinion that "speaks predominantly in terms of hypotheticals, not [a claimant's]

actual experiences" does not establish the existence of a disability.[5] *Moore*, 221 F.3d at 952; *see also Homeyer v. Stanley Tulchin Assocs., Inc.*, 91 F.3d 959, 962 (7th Cir. 1996) (finding of disability under the ADA requires individualized review of the varying degree of impairment present in specific claimant, including stage of the disorder).

Finally, Jones argues that the RTA review board failed to ask for additional pertinent medical information from Devulapally and, on this incomplete record, evaluated her based on her physical and not mental capabilities. R. 68, Pl.'s Br. at 5. These unsupported contentions fail on their face. As discussed, there was ample objective evidence gathered through Jones' application, screening interview, and mental state evaluation to indicate specifically that her cognitive abilities did not merit paratransit eligibility. As for whether the review board should have sought additional information from Jones' doctor, Jones does not contend that she was limited in the medical evidence she could submit before her hearing. Jones points to no legal authority placing an onus on the RTA to then request more from Devulapally than the note he drafted when he was free to submit any other documentation he wished (indeed, the limited details in his deposition testimony

---

[5]It may well be the case that Jones has suffered periods of being symptomatic, including in 2011 as alluded to by Devulapally, since the time that she filed the present lawsuit. If so, notwithstanding the outcome of this case, Jones is free to reapply for paratransit services, as the RTA acknowledges. PSOF ¶ 22; Def.'s Resp. PSOF ¶ 22. The Court also notes that although the factual record is insufficient to establish any eligible disability at the time of her 2010 application, to the extent that the nature of Jones' impairment may have since resulted in sporadic periods of disability, the RTA recognizes a category of "conditional eligibility" when an individual qualifies for paratransit services only for "some trips." DSOF ¶ 9. The RTA is obliged, of course, to consider the merits of any further application by Jones and grant the appropriate category of eligibility that is supported by documentation submitted by Jones.

suggest that there was likely not much more probative evidence he could have provided). If, in fact, such documentation about Jones' current condition now exists, Jones is free to submit a new paratransit application at any time. *See supra* n.5. Accordingly, this attempt to create a genuine issue of material fact around Jones' disability is unfounded and, for the reasons given, RTA has shown that it is entitled to summary judgment.[6]

### IV. Conclusion

For the foregoing reasons, RTA's motion for summary judgment is granted in its entirety.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: December 8, 2014

---

[6]In the interest of completeness, the Court notes that Jones makes a passing reference to RTA's "policy and practice" of denying ADA paratransit services. Second Am. Compl. ¶ 29. To rebut the allegation of any such policy, RTA presents numerous statistics (including a survey showing that only 1-2% of over 65,000 paratransit eligibility decisions between 2008 and 2012 were denials and a random sample of applicants who were administered MMSEs indicating that those found ineligible also garnered high scores, like Jones). Def.'s Br at 10-11. In any event, it appears that Jones merely framed the denial of her application as a discriminatory "policy and practice" against *her* individually, *see* Second Am. Compl. ¶ 29; she adduced absolutely no evidence about any pattern or other instances of discrimination against individuals with schizophrenia generally. Summary judgment is also therefore appropriate for a claim of a broader discriminatory policy, to the extent that Jones even raises one.